NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRYSTAL CHERRY,<br><br>                          Plaintiff,<br><br>   v.<br><br>ERIC WHITEHEAD, JOHN AJEBE, FLORENCE RICHEMOND, TITOLA HUGHES-AKINSANYA, JANET MONROE, DR. MARK SCHUCHMAN, JOHN DOE 1-20, JANE DOE 1-20, JOHN ROE 1-20, and JANE ROE 1-20,<br><br>                          Defendants. | Civil Action No. 09-cv-04161 (SDW)<br><br>OPINION<br><br><br>January 25, 2012 |

**WIGENTON**, District Judge.

Before the Court is defendants', Eric Whitehead ("Whitehead"), John Ajebe ("Ajebe"), Florence Richemond ("Richemond"), Titola Hughes-Akinsanya ("Hughes-Akinsanya"), Janet Monroe ("Monroe"), and Dr. Mark Schuchman ("Dr. Schuchman")[1] (collectively "Defendants"), motion to dismiss the second amended complaint of plaintiff Crystal Cherry ("Plaintiff" or "Cherry") in lieu of an answer pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"), filed on their behalves by the State of New Jersey ("State").

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332 and 1343(a)(3), and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391. This Court,

---

[1] Ajebe is also pled or referred to as "Ajedbe"; Florence Richemond is also pled as "Florance" "Richmond"; Dr. Schuchman is also pled or referred to as "Shookman"; and Hughes-Akinsanya is also pled or referred to as "Hughes Tillo", "Titlo" and "Hughes Alihuanny Titlo."

1

having considered the parties' submissions, decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff is an involuntarily committed patient at Greystone Park Psychiatric Hospital ("Greystone"). (Second Am. Compl. ¶ 4.) Greystone is a psychiatric hospital created, funded and operated by the State. *See* N.J.S.A. 30:1-7, 30:2-1, 30:4-160. On the dates at issue, Whitehead and Ajebe were allegedly nurses assigned to the area where Plaintiff's room was located, and Richemond and Hughes-Akinsanya were staff members allegedly assigned to the floor where Plaintiff's room was located. (Second Am. Compl. ¶¶ 6-9.) Monroe is the Chief Executive Officer of Greystone. (*Id*. ¶ 10.) Dr. Schuchman is a psychiatrist at Greystone and a member of the treatment team responsible for Plaintiff's care. (*Id*. ¶ 11.) The "John Doe," "Jane Doe," "John Roe," and "Jane Roe" numbered defendants are allegedly other members of the treatment team responsible for Plaintiff's care during the relevant time period, as well as unknown nurses and staff members working on the days that other Greystone patients allegedly attacked Plaintiff. (*Id*. ¶¶ 12-15, 21.)

On or about May 10, 2009, Plaintiff alleges that Tionka Atkins ("Atkins"), another Greystone patient, attacked her inside the hospital after a verbal altercation between them. (Second Am. Compl. ¶¶ 25, 34.) Atkins allegedly had a history of attacking other patients and staff members. (*Id*. ¶ 27.) After a verbal altercation, Atkins remained near Plaintiff's room and refused to leave despite Plaintiff's request for Atkins to do so. (*Id*. ¶¶ 30-32.) Defendants Whitehead, Ajebe, Richemond and Hughes-Akinsanya allegedly witnessed the verbal altercation

which continued until Atkins physically assaulted Plaintiff without provocation.  (*Id*. ¶¶ 26, 35.) As alleged, neither these Defendants nor any other staff member took action to prevent Atkins' attack or protect Plaintiff from it.  (*Id*. ¶ 35.)

On or about May 19, 2009, Plaintiff alleges that she was assaulted a second time by another patient, named "Janine" after a verbal altercation.  (*Id*. ¶¶ 36-39.)  As alleged, Defendants Whitehead, Ajebe, Richemond and Hughes-Akinsanya also witnessed the second assault, yet took no action to protect Plaintiff from Janine's attack.  (*Id*. ¶¶ 40, 43.)  Plaintiff also alleges that these Defendants "failed to follow regulations[,] policies, or customs promulgated and implemented by Greystone for handling patient attacks on other patients and staff."  (*Id*. ¶ 44.)  After both attacks, Plaintiff alleges that she "suffered physical injuries and emotional distress" but received no medical care.  (*Id*. ¶¶ 45-46.)

On or about December 19, 2009, Plaintiff alleges that she was involved in another verbal altercation with "another Greystone patient."  (*Id*. ¶ 47.) After this incident, Plaintiff alleges that Dr. Schuchman summoned her to a "treatment team meeting," during which she denied physically assaulting that other patient, which security footage confirmed, but was nevertheless punished by "stripping her of her 'Level 3' privileges for about 3 months."  (*Id*. ¶¶ 48-52.) Plaintiff contends that Defendant Monroe knew of the treatment team's action, but failed to take "any corrective action", and thus, "ratified" their actions.  (*Id*. ¶ 53.)

Plaintiff also alleges that Monroe, Chief Executive Officer of Greystone, as well as other unnamed defendants were "responsible for promulgating and enforcing policies, practices, customs, and protocols regarding the safety of, treatment of, and care provided to involuntarily committed patients at Greystone and ensuring that involuntarily committed patients' constitutional rights are not violated."  (*Id*. ¶ 102.)  Plaintiff alleges that Monroe and the other

unnamed defendants are responsible for training employees, yet failed to do so. (*Id.* ¶¶ 103-115.) Further, Plaintiff alleges that training staff would have prevented Plaintiff suffering injury from the physical attacks, and ensured that Plaintiff would have received at least some medical care. (*Id.* ¶¶ 109-113.)

On August 14, 2009, Plaintiff filed a complaint *pro se* alleging violations of her Fourteenth Amendment rights and seeking damages from the individual Defendants pursuant to 42 U.S.C. § 1983. (*See generally* Compl.) On February 9, 2010, the State filed a motion to dismiss the complaint in lieu of an answer on behalf of Defendants Whitehead, Ajebe, Richemond and Hughes-Akinsanya. By Letter Order dated March 17, 2010, Plaintiff's application for assignment of *pro bono* counsel was granted. (Mar. 17, 2010 Letter Order 2.) By Order dated August 9, 2010, this Court denied Defendants' motion to dismiss and directed Plaintiff to file an amended complaint no later than September 30, 2010. (Aug. 9, 2010 Order.)

On September 28, 2010, Plaintiff, through her *pro bono* counsel, filed a timely amended complaint. On January 19, 2011, the State filed a motion to dismiss the amended complaint in lieu of an answer on behalf of Defendants Whitehead, Ajebe, Richemond, Hughes-Akinsanya, Monroe and Dr. Schuchman.[2] As permitted by the Amended Scheduling Order dated March 7, 2011, Plaintiff filed a timely Second Amended Complaint on April 22, 2011 ("Second Amended Complaint").

The Second Amended Complaint contains three counts under 42 U.S.C. § 1983 against Whitehead, Ajebe, Richemond, Hughes-Akinsanya and other unnamed defendants for violations of Plaintiff's Fourteenth Amendment rights: (1) to due process (Count One); (2) to receive

---

[2] On December 30, 2009, Cherry filed a second complaint *pro se* alleging violations of her Fourteenth Amendment rights and seeking damages from certain individually named defendants pursuant to 42 U.S.C. § 1983. (Civ. No. 09-06562, Docket No. 1.) By Consolidation Order dated August 29, 2010, this Court consolidated Civil Action No. 09-06562 with Civil Action No. 09-04161for all proceedings under Civil Action No. 09-04161. (Docket No. 35.)

medical care (Count Two); and (3) to equal protection (Count Three). Plaintiff also asserts a claim under 42 U.S.C. § 1983 against Dr. Schuchman and other unnamed defendants for violation of her Fourteenth Amendment right to equal protection (Count Four) and against Monroe for violation of her Fourteenth Amendment right to due process (Count Five).[3] Plaintiff brings two additional counts generally against all Defendants. The first of these (Count Six) is a claim for intentional infliction of emotional distress and the second (Count Seven) is for negligent infliction of emotional distress. On June 20, 2011, the State filed the instant Motion on behalf of Defendants. On July 29, 2011, Plaintiff filed opposition to the Motion.

## LEGAL STANDARD

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted) ("Rule 8(a)(2) still requires a 'showing' rather than a blanket assertion, of an entitlement to relief." *Bell Atl. Corp.* at 1965 n. 3); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

---

[3] Plaintiff brings five claims pursuant 42 U.S.C. § 1983.

5

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (citations omitted) (quoting *Twombly*, 550 U.S. at 556–57, 570). Determining whether allegations in a complaint are plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court must grant a motion to dismiss for failure to show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.*

## DISCUSSION

### A. Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983 (2006). To state a valid claim for relief under § 1983 a plaintiff must allege 1) the violation of a right secured by the Constitution or laws of the United States, and 2) that the

6

alleged deprivation was caused by a "state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### 1. Due Process Claims

The Fourteenth Amendment guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." This due process guarantee has been interpreted to include both procedural and substantive components, with the latter protecting fundamental rights which are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Conn.*, 302 U.S. 319, 325-26 (1937). Consequently, substantive due process protects inmates' fundamental rights and, in addition, guards the inmates against government conduct which is so egregious that it "shocks the conscience," even if this conduct does not implicate any specific fundamental right. *See United States v. Salerno*, 481 U.S. 739, 746 (1987). The Third Circuit has recognized that the state has a duty to protect or care for individuals when a "special relationship" exists, such as here when a person has been involuntarily committed. *See Torisky v. Schweiker*, 446 F.3d 438, 445 (3d Cir. 2006).

The Fourteenth Amendment affords pretrial detainees and civilly committed individuals, such as Plaintiff, protections that are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

For the purposes of the Eighth Amendment, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Third Circuit, however,

7

clarified in *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987), that the correctional personnel may manifest "deliberate indifference" by denying medical care if such "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury." *Id*. at 346 (quoting *Westlake v. Luca*s, 537 F.2d 857, 860 (6th Cir. 1976)).  In *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990), the Third Circuit noted that the officials' acts effectively denying or delaying a prescribed medical treatment for non-medical reasons violate the requirements set forth by the Eighth Amendment. *Id*. at 110 ("'. . . .deliberate indifference to, and defiance of, explicit medical instructions, resulting in serious and obvious injuries' stated a violation of constitutional rights") (quoting *Martinez v. Mancusi*, 443 F.2d 921, 924–25 (2d Cir.1970)); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) ("Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such an informed judgment has, in fact, been made") (internal quotation and citation omitted);  *Lanzaro*, 834 F.2d at 346 (deliberate indifference is demonstrated "when . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs").

*Due Process Claims Against Whitehead, Ajebe, Richemond, and Hughes-Akinsanya*

Plaintiff asserts Count One (violation of the Fourteenth Amendment right to due process) and Count Two (violation of the Fourteenth Amendment right to receive medical care) against Whitehead, Ajebe, Richemond and Hughes-Akinsanya. (*See* Second Am. Compl. ¶¶ 9-12.)  The State argues that Defendants Whitehead, Ajebe, Richemond, Hughes-Akinsanya and other unnamed defendants did not violate Plaintiff's right to due process by failing to protect her from physical injury or by failing to provide a reasonably safe environment.  In particular Defendants

8

discuss *Youngberg v. Romeo*, 457 U.S. 307 (1982) and rely on reasoning from *Shaw v. Strackhouse*, 920 F.2d 1135 (3d Cir. 1990) to support their position. (*See* Defs.' Br. 8-15.)

In *Youngberg v. Romeo*, the Supreme Court held that an involuntarily committed patient had a substantive due process right to personal security and reasoned that "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed--who may not be punished at all--in unsafe conditions." 457 U.S. at 315-16.  In *Shaw v. Strackhouse*, the plaintiff was a mentally impaired man who resided at a state mental institution who brought claims against professional and nonprofessional employees under § 1983, claiming that they failed to protect him from abuse. 920 F.2d 1135. The district court granted summary judgment to defendants and on appeal the Third Circuit concluded that the district court "erred to the extent that it applied a deliberate indifference standard in assessing the culpability of *all* defendants." *Id.* at 1139 (emphasis in original).  The Third Circuit affirmed in part and reversed in part, holding *inter alia* that the "professional judgment standard [applies to professional personnel and] to all failure to protect, excessive restraint, and failure to habilitate claims brought by mentally retarded persons who are institutionalized" and that the "deliberate indifference" standard applies to nonprofessional personnel. *Id.* at 1146-47. Neither *Youngberg* nor *Shaw* addresses dismissal of a plaintiff's claims at the motion to dismiss stage, before even an answer is proffered.

Next, the State argues that Defendants Whitehead, Ajebe, Richemond, Hughes-Akinsanya and other unnamed defendants did not violate Plaintiff's right to due process by failing to provide her with medical attention. Essentially, the State posits that because Plaintiff failed to specify the nature of her injuries, that any defendant knew she needed medical treatment and specifically refused to provide it, or that the "Defendants delayed any *necessary* medical

9

treatment based on a non-medical reason," her complaint must be dismissed. (Defs.' Br. 15-18) (emphasis in original).[4]  Here, Plaintiff has alleged that she was injured after an altercation, Defendants knew that she was injured, and they failed to provide *any* medical assistance. (Second Am. Compl. ¶ 46.)[5]  Accordingly, this Court determines that Plaintiff has pled this claim with sufficient particularity to put Defendants on notice of a violation of her right to medical treatment.

Further, Plaintiff cited two incidents where she was involved in an altercation and claimed that she suffered "physical injuries and emotional distress" and that Defendants failed to protect her from such injury. (Second Am. Compl. ¶ 45.)  Plaintiff also claims that Defendants Whitehead, Ajebe, Richemond, and Hughes-Akinsanya were present during the assaults and were aware of Atkins' history of violence (*Id.* at ¶¶ 26-28, 40-43.)  The pleadings could form the basis of a claim for the violation of constitutional rights.  Whitehead and Ajebe are nurses and even if the professional judgment standard rather than the deliberate indifference standard applied to them (and other named defendants), Plaintiff's pleading that she received no medical care whatsoever after two assaults and other allegations against these individuals are sufficient to survive a motion to dismiss.  Accordingly, this Court determines that Plaintiff has pled with sufficient particularity to put Defendants on notice of violations of her constitutional rights.

---

[4] The State cites cases to support its position that, while perhaps relevant, were decided after the motion to dismiss stage. (Defs.' Br. 16.); *see e.g.*, *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004) (aff'd in part, rev'd and remanded in part, district court's grant of summary judgment to defendants); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999) (vacated district court's grant of summary judgment and remanding for reevaluation of qualified immunity issue).

[5] A mere difference of opinion between the prison's medical staff and the inmate with regard to the diagnosis or treatment that the inmate receives does not support an Eighth Amendment claim. *See Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (noting that courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment.") (internal citations omitted).  The chief question is whether the plaintiff prisoner has been provided with some type of treatment by the defendants, regardless of whether it is what the plaintiff desired. *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

*Due Process Claims Against Defendant Monroe*

Plaintiff asserts Count Five, violation of the Fourteenth Amendment right to due process against Monroe and other unnamed defendants.  (*See* Second Am. Compl. ¶¶ 100-115.) Plaintiff's allegation against Defendant Monroe, the Chief Executive Officer of Greystone, is essentially that she failed to train or take corrective action. (*See id.* ¶¶ 53, 108.) Plaintiff alleges that Defendant Monroe's failure to train "amounts to deliberate indifference." (Id. ¶ 108.)

Plaintiff's claim against Defendant Monroe cannot facially amount to "deliberate indifference."  This Court notes that "deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)).  A supervisor may be liable where he or she acted, "with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." *A.M. ex rel J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)(citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Plaintiff has not pled facts sufficient to sustain a claim against Defendant Monroe and conclusory statements are not sufficient.[6]  *See Ashcroft*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  Merely stating that "[f]ailure to provide training or appropriate training to those persons charged with the day-to-day care of involuntarily committed patients on when to prevent patients from assaulting other patients, [providing] medical care to a patient after an assault by another patient, and the following of Greystone policies, practices, customs, and protocols

---

[6] Even under the professional judgment standard, Plaintiff's allegations would not be sufficient to maintain a claim against Defendant Monroe.

11

regarding the treatment of such patients amounts to deliberate indifference" on the part of Monroe does not suffice. (Second Am. Compl. ¶ 108.) General accusations that "Monroe knew of the treatment team's action, but failed to take any corrective action, and thereby ratified the actions of Schuchman and the treatment team" (Second Am. Compl. ¶ 53) are conclusory in nature and not adequate to maintain claims against her for failure of due process.[7] Further, Plaintiff does not allege facts to support a custom of practice by Monroe that could rise to the level of deliberate indifference.

### 2. Equal Protection Claims

The concept of equal protection, as embodied in the Due Process Clause of the Fifth Amendment, has been construed to implicitly include an equal protection guaranty generally as broad as that of the Fourteenth Amendment, applicable to the states. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *United States v. Milan*, 304 F.3d 273, 281 n. 7 (3d Cir.2002) (citing *United States v. Leslie*, 813 F.2d 658,659 (5th Cir. 1987)), *cert. denied*, 538 U.S. 1024 (2003).

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *see also Artway v. Attorney Gen. of New Jersey*, 81 F.3d 1235, 1267 (3d Cir. 1996). Despite its broad language, "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

---

[7] Similarly, Plaintiff has not sufficiently pled a specific factual basis to maintain claims of intentional infliction of emotional distress or negligent infliction of emotional distress against Defendant Monroe. To the extent that Counts Six and Seven of the Second Amended Complaint refer to Defendant Monroe these counts will be dismissed against Monroe.

12

Plaintiff asserts Count Three for violation of Fourteenth Amendment right to equal protection against Whitehead, Ajebe, Richemond and Hughes-Akinsanya, and Count Four regarding such alleged violations by Dr. Schuchman.  (*See* Second Am. Compl. ¶¶ 12-15.)  The State argues that Plaintiff failed to adequately plead causes of action under the Fourteenth Amendment for Equal Protection against any Defendants and concludes that because Plaintiff did not aver membership in a class or group, that Plaintiff is considered to be a "class-of-one". (Defs.' Br. 18-19 (citing *Prof'l Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F.Supp.2d 575, 586 (E.D. Pa. 2010).)  The State also argues that in order to sustain a valid class-of-one Equal Protection claim, Plaintiff must allege that she was "intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment," and identify similarly situated individuals from whom she was treated differently. (*Id*. 19.)

Here, Plaintiff alleges that she was treated differently from other Greystone patients. (Second Am. Compl. ¶ 82.)  Plaintiff has also identified specific instances in which she allegedly was treated differently, alleged that there was "no rational basis" for such treatment and that Schuchman and other unnamed defendants' failure to follow Greystone regulations violated her constitutional rights.   (Second Am. Compl. ¶¶ 81, 92, 95, 96.)  Accordingly, it is at least plausible that Defendants Whitehead, Ajebe, Richemond, Hughes-Akinsanya and Dr. Schuchman violated Plaintiff's right to equal protection.

### B. Qualified Immunity and Sovereign Immunity

Qualified immunity provides extensive protection to government officials sued under § 1983. The immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine of qualified immunity

immunizes government officials "from liability for civil damages [under 42 U.S.C. Section 1983] insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It reflects the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Id*. A government official's entitlement to qualified immunity turns on two considerations: (1) whether the plaintiff has alleged that the defendant violated a constitutional right, and (2) "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). A district court is permitted to exercise its "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson* at 236. However, "[b]ecause qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id*. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The State argues that Plaintiff's claims are insufficient to establish that any constitutional right was violated based on its prior arguments. (Defs.' Br. 25.) This Court disagrees and finds that Plaintiff's claims against Defendants Whitehead, Ajebe, Richemond, Hughes-Akinsanya and Dr. Schuchman individually, are sufficient, and Plaintiff is entitled to discovery to further develop the record. It would be premature at this juncture to determine whether all Defendants

14

were acting in their capacities as employees and administrators of a state psychiatric institution, under state control, are entitled to qualified immunity protection.

Defendants also assert that Plaintiff's claims are barred by the Eleventh Amendment, as federal courts may not hear suits brought by private individuals against the State. (Defs.' Br. 25.) However, in this instance Plaintiff has brought claims against the named Defendants in their individual capacities, which is permitted. (*See generally* Second Am. Compl.) State officers and employees can be held personally liable under § 1983 based on actions performed in their official capacities. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).[8] Specifically, the Supreme Court has held that "the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Id.* at 30-31; *see also Slinger v. New Jersey*, 366 Fed. Appx. 357, 360-61 (reversing the district court's dismissal of a complaint as to § 1983 claims against defendants in their individual capacities). Thus, to the extent the claims are against Defendants Whitehead, Ajebe, Richemond, Hughes-Akinsanya and Dr. Schuchman in their individual capacities, the claims will not be dismissed.

### C. State Claims

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wis. Dept. of Corr. v. Schacht*, 524 U.S. 381, 387, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has

---

[8] "State officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. Unlike official-capacity defendants-who are not 'persons' because they assume the identity of the government that employs them. . . ." *Hafer*, 502 U.S. at 21.

dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284–85 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers v. Gibbs*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284–85. In the instant matter, at this juncture, this Court has not dismissed all the claims over which it has original subject matter jurisdiction, so this argument will not be addressed further herein.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is **DENIED IN PART AND GRANTED IN PART**. This Court **DENIES** Defendants' Motion as to Defendants Whitehead, Ajebe, Richemond, Hughes-Akinsanya, and Dr. Schuchman and **GRANTS** the Motion as to Defendant Monroe.

s/ Susan D. Wigenton, U.S.D.J.

Orig:      Clerk
cc:        Parties
           Magistrate Judge Arleo